Filed 3/19/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br>v.<br><br>MIGUEL ANGEL RIVERA, JR.,<br><br>      Defendant and Appellant. | A158284<br><br>(San Mateo County<br>Super. Ct. No. SC080432B) |

A grand jury indicted defendant Miguel Rivera and his co-defendant, Jerry Coneal, for murder with accompanying special-circumstance allegations of lying in wait and committing the crime for the benefit of a street gang. Rivera pleaded no contest to second degree murder and admitted a prior strike in exchange for the dismissal of the special-circumstance allegations and certain other enhancements. In 2017, he was sentenced to a total term of 35 years to life in prison.

The Legislature subsequently amended Penal Code sections 188 and 189 to limit liability for murder under the doctrines of felony murder and natural and probable consequences, and it established a procedure, under newly enacted Penal Code section 1170.95, for eligible defendants to petition to have their murder convictions vacated and be resentenced.[1] Rivera filed a

---

[1] Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437) (Stats. 2018, ch. 1015). All further statutory references are to the Penal Code.

1

petition for relief under section 1170.95, and the trial court appointed counsel for him. After receiving briefing from the parties, the court denied the petition on the basis that Rivera failed to make a prima facie showing of eligibility for relief.[2] Specifically, the court determined that he "entered a plea to second degree murder with malice" and nothing in the record of conviction supported the conclusion that the murder was "anything other than an intentional killing in which [he] harbored such malice."

On appeal, Rivera argues that the trial court erred in concluding that his plea precluded his eligibility for resentencing under section 1170.95 as a matter of law. We agree. We hold that a defendant who entered a plea to murder "with malice aforethought" is not categorically incapable of making a prima facie showing of eligibility for relief under section 1170.95, subdivision (c) (section 1170.95(c)), because such a plea is not necessarily an admission that the crime was committed with actual malice. We also hold that a defendant who stipulated to a grand jury transcript as the factual basis of the plea may make a prima facie showing of eligibility for relief by identifying a scenario under which he or she was guilty of murder only under a now-invalid theory, even if the record of conviction does not demonstrate that the indictment rested on that scenario. We disagree with *People v. Nguyen* (2020) 53 Cal.App.5th 1154 (*Nguyen*) to the extent it holds otherwise.

Applying these principles here, we conclude that the trial court erred in ruling that Rivera failed to make a prima facie showing of eligibility for relief

---

[2] The trial court also denied the petition on the independent basis that Senate Bill No. 1437 is unconstitutional. The Attorney General concedes, as numerous appellate decisions have since held, that the legislation is constitutional. (E.g., *People v. Lombardo* (2020) 54 Cal.App.5th 553, 555; *People v. Nash* (2020) 52 Cal.App.5th 1041, 1052–1053; *People v. Johns* (2020) 50 Cal.App.5th 46, 54.) Accordingly, we do not address this issue further.

under section 1170.95(c).  Accordingly, we reverse and remand for the trial court to issue an order to show cause and conduct further proceedings to determine whether resentencing is warranted.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

In October 2012, Christopher Baker was shot to death in East Palo Alto.  After hearing evidence tending to suggest that Rivera was present when Coneal, a fellow gang member, shot Baker, and drove Coneal to and from the scene, a grand jury indicted Rivera and Coneal for Baker's murder.[3] The operative indictment's only count alleged that Coneal and Rivera "did willfully, unlawfully, and with malice aforethought murder [Baker] . . . in violation of . . . section 187(a), a felony," with accompanying gang and lying-in-wait special circumstances as to both defendants.  The indictment also alleged other gang-related enhancements as to both defendants, one that the offense was committed to benefit a gang and the other that a principal personally and intentionally discharged a firearm causing death during such an offense.  Only Coneal, however, was alleged to have personally and intentionally discharged a firearm causing death.[4]  Finally, the indictment

_____

[3] As we discuss further below, the trial court declined to take judicial notice of the reporter's transcript of the grand jury proceedings, but the Attorney General filed in this court a request for judicial notice of the "more than 2,000 pages" of that document pertaining to Rivera.  We decline the request because, for reasons we shall explain, the transcript's content is unnecessary to our disposition.  (See *Mireskandari v. Gallagher* (2020) 59 Cal.App.5th 346, 359, fn. 11.)  The basic facts we have recited, however, which are primarily drawn from documents in the record that in turn cite to the grand jury transcript, are not contested by Rivera.

[4] The special circumstance allegations were made under section 190.2, subdivision (a)(15) (lying in wait) & (22) (gang).  The other gang allegations were made under sections 186.22, subdivision (b)(5) (gang offense), and

3

alleged various enhancements against Rivera based on a prior conviction of attempted burglary.[5]

In July 2017, as part of a plea agreement, Rivera entered a plea of no contest to second degree murder, admitted the offense was committed to benefit a gang, and admitted the strike. The remaining allegations were dismissed. Later that month, the court sentenced Rivera to 35 years to life in prison, composed of a term of 15 years to life for murder, doubled because of the strike, and a consecutive term of five years for the prior conviction of a serious felony.[6]

Before the trial court took Rivera's plea to murder, the prosecutor confirmed that "[t]he People would be willing to stipulate that it's murder in the second degree." The court then asked, "Mr. Rivera, what is your plea to Count 1, that on or about October 5, 2012, you did willfully, unlawfully[,] and with malice aforethought murder [Baker] . . . in violation of Penal Code section 187(a), a felony?" Rivera responded, "No contest."

After Rivera admitted the remaining allegations attached to the murder count, the trial court asked his trial counsel whether counsel

---

12022.53, subdivision (e) (firearm use during gang offense). And the firearm allegation against Coneal was made under section 12022.53, subdivision (d).

[5] The indictment alleged that in 2011 Rivera was convicted of attempted first degree burglary under sections 460, subdivision (a), and 664, which constituted a serious felony under sections 667, subdivision (a), and 1170.12, subdivision (c)(1). The indictment also alleged that he served a prior prison term for the offense under section 667.5, subdivision (b), and that he was on parole when he committed the murder.

[6] The murder conviction was under section 187, subdivision (a), with the term doubled under section 1170.12, subdivision (c)(1), and the enhancement for the prior conviction of a serious felony was under section 667, subdivision (a). The sentence in this case is consecutive to a term of 14 years and four months imposed on Rivera in an earlier Santa Clara County case.

"stipulate[d] to a factual basis" for the plea. Counsel responded affirmatively, indicating that he did so based on the transcript of the grand jury proceedings.[7] The court "accept[ed] the stipulated factual basis" and found Rivera guilty of second degree murder based upon the plea.

In April 2019, shortly after section 1170.95 became effective, Rivera filed a petition claiming he was eligible for relief because he entered a plea to murder "in lieu of going to trial because [he] believed [he] could have been convicted of 1st or 2nd degree murder at trial pursuant to the felony murder rule or the natural and probable consequences doctrine." The trial court appointed counsel (the same attorney who represented Rivera when he entered his plea) and ordered the People to file a response to the petition and Rivera to file a reply to the People's response.

The People argued that Rivera failed to make a prima facie showing of eligibility for relief because the record demonstrated that the prosecution proceeded on "a single basis of liability reliant on a theory that [Rivera] jointly possessed malice aforethought with . . . Coneal when they murdered . . . Baker," and Rivera identified nothing to indicate otherwise. The People also filed a request for judicial notice of various documents from the underlying criminal case, including the reporter's transcript from the grand jury proceedings.

In reply, Rivera argued that he could not now be convicted of murder "because of the elimination of the natural and probable consequences doctrine." Pointing out that there was no dispute Coneal was the actual shooter, Rivera highlighted the lack of evidence that he shared or knew of

---

[7] No summary of the transcript's content was put on the record before Rivera entered his plea. Specifically, the prosecutor did not summarize any relevant facts at the plea hearing, and the plea form did not contain one.

5

Coneal's intent, that he knew Coneal had a gun, or that he assisted Coneal in any way except by driving the car. Rivera drew a parallel to the facts in *In re R.G.* (2019) 35 Cal.App.5th 141, which involved a juvenile convicted of second degree murder under the natural and probable consequences doctrine based on his intent to participate in a gang assault that ended in murder. (*Id.* at p. 146.)

After receiving the parties' briefing, the trial court (the same judge who took Rivera's plea) held a hearing on the petition in July 2019. The court granted the People's request for judicial notice of documents previously filed in the case, with the exception of the grand jury transcript. In declining the request as to the transcript, the court stated, "I can't find any basis on which the court should take judicial notice of that uncontested testimony." The court then denied the petition for failure to make a prima facie showing of eligibility for relief on the basis that Rivera was charged with and "entered a plea to second degree murder with malice." In so ruling, the court emphasized that despite its familiarity "with the facts underlying what led to the murder . . . , [it was] not taking into consideration [its] knowledge of any of that in evaluating whether . . . Rivera . . . made a prima facie case for relief."

## II.
### DISCUSSION

Rivera argues that the trial court erred by denying his petition on the basis that his conviction precluded relief under section 1170.95 as a matter of law, because his plea to second degree murder did not "involve[] an admission of express malice and intent to kill." He contends that he is entitled to an evidentiary hearing on whether he could still be convicted of second degree murder. We agree.

6

A.    *Senate Bill No. 1437 and Section 1170.95*

" 'Effective January 1, 2019, Senate Bill [No.] 1437 amended murder liability under the felony-murder and natural and probable consequences theories.  The bill redefined malice under section 188 to require that the principal acted with malice aforethought.  Now, "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)' [Citation.]  The bill also amended section 189 to provide that a defendant who was not the actual killer and did not have an intent to kill is not liable for felony murder unless he or she 'was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2,' or the victim was a peace officer performing his or her duties.  (§ 189, subds. (e) & (f).)" (*People v. Daniel* (2020) 57 Cal.App.5th 666, 672, review granted Feb. 24, 2021, S266336 (*Daniel*).)

"Senate Bill No. 1437 also enacted section 1170.95, which authorizes '[a] person convicted of felony murder or murder under a natural and probable consequences theory [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts.'  (§ 1170.95, subd. (a).) . . . '[T]he defendant initiates the process by filing a petition in the sentencing court that must include three pieces of information.  (§ 1170.95, subd. (b).)  First, the petition must include "[a] declaration by the petitioner that he or she is eligible for relief under this section, based on all the requirements of subdivision (a)."  (§ 1170.95, subd. (b)(1)(A).)  Those requirements are (1) "[a] complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine"; (2) "[t]he petitioner

7

was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder"; and (3) "[t]he petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a).) Second, the petition must include "[t]he superior court case number and year of the petitioner's conviction." (§ 1170.95, subd. (b)(1)(B).) And finally, the petition must state "[w]hether the petitioner requests the appointment of counsel." (§ 1170.95, subd. (b)(1)(C).)' " (*Daniel*, *supra*, 57 Cal.App.5th at p. 672.)

" 'Section 1170.95(c) addresses the procedure by which a trial court determines whether the petitioner is entitled to an evidentiary hearing. The subdivision provides in full: "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor['s] response is served. These deadlines shall be extended for good cause. If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause." ' " (*Daniel*, *supra*, 57 Cal.App.5th at p. 673.)

After issuing an order to show cause, the trial court must "hold a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts," unless the parties "waive a resentencing hearing and stipulate that the petitioner is eligible to have his or her murder conviction vacated and for resentencing."

8

(§ 1170.95, subd. (d)(1)–(2).) "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. . . . The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (§ 1170.95, subd. (d)(3).) "If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges," or, if "murder was charged generically, and the target offense was not charged," on the conviction "redesignated as the target offense or underlying felony." (§ 1170.95, subds. (d)(3), (e).)

> B.     *The Standards Governing the Prima Facie Stage of Review*

"Since [Senate Bill No.] 1437 was adopted and its mechanism for retroactive applications has come into play through the filing of section 1170.95 petitions, many questions have arisen about that process and percolated up through appeals from resentencing decisions." (*People v. Duchine* (2021) 60 Cal.App.5th 798, 811 (*Duchine*).) This appeal implicates two areas of disagreement. First, the Supreme Court has granted review to decide whether a trial court may consider the record of conviction in determining whether a petitioner has made a prima facie showing of eligibility for relief under section 1170.95(c). (*People v. Lewis* (2020) 43 Cal.App.5th 1128, review granted Mar. 18, 2020, S260598.) Although Rivera does not dispute that we may consult the indictment and documents related to the plea, including the plea hearing transcript, the parties do disagree about whether we may properly rely on the grand jury transcript.

9

Second, Courts of Appeal disagree about the nature of the petitioner's burden to make a prima facie showing of eligibility for relief under section 1170.95(c). Recently, in *Duchine*, our colleagues in Division Two of this court summarized two competing interpretations. "In *People v. Drayton* (2020) 47 Cal.App.5th 965 (*Drayton*), . . . the Sixth District [Court of Appeal] held that at the prima facie stage of a resentencing petition the trial court should not decide unresolved factual issues that involve credibility determinations or weighing of evidence. . . . According to *Drayton*, the trial court's authority to make factual determinations at the prima facie stage 'is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime).' " (*Duchine*, *supra*, 60 Cal.App.5th at pp. 811–812, fn. omitted.) On the other hand, in *People v. Garcia* (2020) 57 Cal.App.5th 100, review granted Feb. 10, 2021, S265692 (*Garcia*), Division Six of the Second District Court of Appeal "interpreted section 1170.95's eligibility requirement in subdivision (a)(3) that the petitioner make a prima facie showing he or she 'could not be convicted of first or second degree murder because of changes' wrought by [Senate Bill No.] 1437 as importing a 'substantial evidence' standard and as requiring a court to deny a petition if it concludes substantial evidence exists in the record on which a jury could have based a murder conviction on a valid theory had it been instructed on that theory."[8] (*Duchine*, at p. 812.) In short,

---

[8] In reaching its holding, *Garcia* relied on a case from another division of the Second District that involved "the nature of the prosecution's burden at the evidentiary hearing phase." (*Duchine*, *supra*, 60 Cal.App.5th at p. 812.) That other Second Division case, in which the Supreme Court has since granted review, presents the issue whether the People's burden of

10

while under *Drayton* a petitioner who "asserts he [or she] lacked the requisite intent or did not act in a manner that would make him [or her] liable under still-valid murder theories" has made a sufficient prima facie showing "unless the record of conviction refutes those assertions *as a matter of law*," under *Garcia* such assertions are insufficient if there is substantial evidence in the record to support the petitioner's guilt of murder under a still-valid theory. (*Duchine*, at pp. 812–813.)

*Duchine* concluded, and the parties appear to agree, that *Drayton* states the appropriate standard.[9] (*Duchine*, *supra*, 60 Cal.App.5th at pp. 813–814.) We agree with *Duchine*'s reasoning and adopt its holdings that (1) "the prima facie showing the [petitioner] must make is that he [or she] did not, in fact, act [as required] or harbor the mental state required . . . for a murder conviction under current law" and (2) "the time for weighing and balancing and making findings on the ultimate issues arises at the evidentiary hearing stage rather than at the prima facie stage, at least where the record is not dispositive on the factual issues. Thus, absent a record of conviction that *conclusively establishes* that the petitioner engaged in the requisite acts and had the requisite intent, the trial court should not question [the petitioner's] evidence." (*Id.* at p. 815, italics added.)

The interplay between the two issues we have identified—the materials a trial court may consult and a petitioner's required showing at the prima

---

establishing a petitioner's ineligibility for relief at a hearing under section 1170.95, subdivision (d)(3), is satisfied by presenting substantial evidence of a petitioner's guilt of murder under a still-valid theory or whether it requires proof of every element of the crime beyond a reasonable doubt. (*People v. Duke* (2020) 55 Cal.App.5th 113, review granted Jan. 13, 2021, S265309.)

[9] The Attorney General's brief cites *Drayton* but not *Garcia*, which was decided almost two months before the brief was filed.

11

facie stage—is key to the resolution of this case. As we now discuss, although the trial court mistakenly ruled that Rivera's plea to murder as charged in the indictment barred relief as a matter of law, it correctly declined to rely on the grand jury transcript in deciding whether Rivera made the required prima facie showing. This is because the transcript does not establish any " 'readily ascertainable facts' " conclusively demonstrating that Rivera is ineligible for relief under section 1170.95. (*Duchine, supra*, 60 Cal.App.5th at p. 815, quoting *Drayton, supra*, 47 Cal.App.5th at p. 980.)

    C.    *Rivera Made a Prima Facie Showing of Eligibility for Relief Under Section 1170.95(c).*

We begin by reviewing the general law of murder and the various theories under which it may be proven. "Murder is the unlawful killing of a human being, or a fetus, with malice aforethought." (§ 187, subd. (a).) "For purposes of Section 187, malice may be express or implied." (§ 188, subd. (a).) In other words, the statutory phrase "malice aforethought" refers to both express and implied malice. "Malice is express when there is manifested a deliberate intention to unlawfully take away the life of a fellow creature." (§ 188, subd. (a)(1).) "Malice is implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." (§ 188, subd. (a)(2).) "Express malice is an intent to kill," but implied malice does not require such intent. (*People v. Gonzalez* (2012) 54 Cal.4th 643, 653 (*Gonzalez*).) Rather, "[m]alice is implied when a person willfully does an act, the natural and probable consequences of which are dangerous to human life, and the person knowingly acts with conscious disregard for the danger to life that the act poses." (*Ibid.*)

"Second degree murder is the unlawful killing of a human being with malice aforethought but without the additional elements, such as willfulness, premeditation, and deliberation, that would support a conviction of first

degree murder." (*People v. Knoller* (2007) 41 Cal.4th 139, 151.) All murders committed with implied malice are of the second degree. (*Gonzalez, supra,* 54 Cal.4th at p. 653.) In addition, if a person commits murder with the intent to kill, but "the intent to kill is not formed after premeditation and deliberation, the murder is of the second degree." (*Ibid.*)

Before Senate Bill No. 1437, "the natural and probable consequences doctrine was an exception to the actual malice requirement"—i.e., the requirement of either express or implied malice.[10] (*People v. Clements* (2021) 60 Cal.App.5th 597, 610 (*Clements*); *People v. Gentile* (2020) 10 Cal.5th 830, 847 (*Gentile*).) The name of the doctrine is confusing, since implied malice also incorporates the idea of "natural and probable consequences," but the two concepts are distinct. Whereas implied malice is based on "the 'natural and probable consequences' of a defendant's *own* act," the natural and probable consequences doctrine was "a theory of vicarious liability under which '[a]n aider and abettor [was] guilty not only of the intended, or target, crime but also of any other crime a principal in the target crime actually commit[ted] (the nontarget crime)' "—including murder—" 'that [was] a natural and probable consequence of the target crime.' " (*Daniel, supra,* 57 Cal.App.5th at p. 677, fn. 4.) "Because a nontarget murder ' "[was] unintended, the mens rea of the aider and abettor with respect to that offense [was] irrelevant and culpability [was] imposed simply because a reasonable person could have foreseen the commission of the [murder]." ' " (*Clements,* at p. 610.) At the time Rivera was convicted, an aider and abettor could be

_____

[10] Likewise, the felony-murder rule requires neither express nor implied malice. Instead, it " ' "imputes the requisite malice for a murder conviction to those who commit a homicide during the perpetration of a felony inherently dangerous to human life." ' " (*People v. Baker* (2021) 10 Cal.5th 1044, 1105.)

found guilty of second degree murder based on the natural and probable consequences doctrine. (See *People v. Chiu* (2014) 59 Cal.4th 155, 166; *Clements*, at p. 610.)

Under section 188 as amended by Senate Bill No. 1437, "to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) Although the legislation thus "abolished the natural and probable consequences doctrine" as a theory of vicarious liability, "it maintained the viability of murder convictions based on implied malice, and the definition of implied malice remains unchanged." (*Clements, supra,* 60 Cal.App.5th at p. 618.) In other words, a person may still be convicted of second degree murder, either as a principal or an aider and abettor, "if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life." (*Gentile, supra,* 10 Cal.5th at p. 850; *Clements*, at p. 618–619.)

It is undisputed that a conviction of second degree murder does not, in and of itself, bar a petition under section 1170.95. (See *Gentile, supra,* 10 Cal.5th at p. 847 [section 1170.95 "procedure expressly contemplates that defendants convicted of second degree murder can avail themselves of Senate Bill [No.] 1437's ameliorative provisions"].) To the contrary, the Legislature's unambiguous intent in enacting the statute was to provide an avenue of relief for defendants convicted of murder who did not act with either express or implied malice, but to whom malice was imputed under either the felony-murder rule or the natural and probable consequences doctrine. (See generally *Gentile*, at pp. 845–847.) Here, the trial court concluded that the conviction nevertheless precluded relief as a matter of law because Rivera was charged with and "entered a plea to second degree murder *with*

14

*malice.*"[11]  (Italics added.)  We therefore turn to address whether the particulars of Rivera's plea render him ineligible for relief.

One requirement for relief under section 1170.95 is that "[a] complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine."  (§ 1170.95, subd. (a)(1).)  The Attorney General argues that this requirement is not met because the indictment alleged that Rivera " 'did *willfully, unlawfully*[,] *and with malice aforethought* murder . . . Baker' " and, as a special circumstance, that Rivera " '*intentionally killed* the victim by means of lying in wait.' "  Noting that Rivera "was not charged with felony murder" and the indictment lacks any "allegations . . . of an underlying felony or a target offense that could support felony murder or a natural and probable consequences murder," the Attorney General contends that Rivera's "mere theorizing, without any basis in the record," that the prosecution could have proceeded under one of these theories "is insufficient to make a prima facie showing" of eligibility for relief. We disagree.

The generic manner in which murder was charged here did not limit the People to prosecuting Rivera on any particular theories.  As Rivera points out, it is well-settled that "only a single statutory offense of murder exists." (*People v. Nakahara* (2003) 30 Cal.4th 705, 712.)  Thus, "it has long been the law in this state that an accusatory pleading charging murder need not specify degree or the manner in which the murder was committed" (*People v.*

---

[11] In ruling, the trial court stated that Rivera was charged with "murder with malice aforethought, which is an intent to kill."  As discussed above, however, the term "malice aforethought" includes implied malice, which may exist absent an intent to kill.  (*Gonzalez, supra,* 54 Cal.4th at p. 653.)

*Thomas* (1987) 43 Cal.3d 818, 829, fn. 5), nor need it "specify the theory of murder on which the prosecution relies at trial." (*People v. Contreras* (2013) 58 Cal.4th 123, 147.) Specifically, neither felony murder nor murder under the natural and probable consequences doctrine need be separately pleaded. (*Nakahara*, at p. 712 [felony murder]; see *Gentile, supra*, 10 Cal.5th at p. 843 [aiding and abetting not a separate offense]; *People v. Garrison* (1989) 47 Cal.3d 746, 776, fn. 12 [accusatory pleading that charges the defendant "as a principal is sufficient to support a conviction as an aider or abettor"].) The allegation that a murder was committed "willfully, unlawfully, and with malice aforethought" is a well-recognized way of charging murder in this generic sense. (*People v. Sattiewhite* (2014) 59 Cal.4th 446, 473 [such language is silent as to degree of murder]; *People v. Kipp* (2001) 26 Cal.4th 1100, 1131 [such language provides adequate notice of felony-murder theory]; see *People v. Witt* (1915) 170 Cal. 104, 107–108.) In short, despite the fact that the indictment charged Rivera with murder committed with malice aforethought, it allowed the prosecution to proceed on *any* theory of murder.

The fact that a special circumstance requiring an intent to kill was also alleged does not change this conclusion. Had Rivera entered a plea to murder as charged without the degree of the offense being specified, we might agree that the presence of the special circumstance meant the plea was to first degree murder. (See *Sanchez v. Superior Court* (2002) 102 Cal.App.4th 1266, 1267–1268 [defendant charged with special circumstance could not enter plea to unspecified degree of murder to allow trial court to determine degree].) But rules governing the fixing of a crime's degree upon entry of a plea do not affect the issue whether the charging document *permits* the People to proceed upon a particular theory. Particularly where, as here, a defendant ultimately enters a plea to second degree murder, the allegation of a special

16

circumstance requiring an intent to kill does not preclude prosecution based on the natural and probable consequences doctrine.

The Attorney General also argues that because Rivera admitted to committing murder with malice aforethought, he was not "convicted of felony murder or murder under a natural and probable consequences theory" under section 1170.95, subdivision (a). Assuming, without deciding, that the quoted statutory language establishes a requirement for relief apart from the three requirements enumerated in the same subdivision, we cannot agree that Rivera's admission to the count as charged bars relief as a matter of law.

"A guilty plea [or plea of nolo contendere] admits every element of the charged offense." (*In re Chavez* (2003) 30 Cal.4th 643, 649; see § 1016, subd. 3; see also *People v. Cisneros-Ramirez* (2018) 29 Cal.App.5th 393, 405 [plea is concession that prosecution can prove guilt beyond a reasonable doubt].) To be sure, "malice aforethought" is statutorily defined as an element of first and second degree murder. (§§ 187, subd. (a), 189, subd. (b).) But as we have discussed, before Senate Bill No. 1437 malice could be imputed to a defendant under the felony-murder rule or the natural and probable consequences doctrine, meaning that the person did not need to harbor express or implied malice to be convicted of second degree murder. And given that the allegation that a murder was committed "willfully, unlawfully, and with malice aforethought" is a generic charge permitting the prosecution to proceed on *any* theory of murder, we cannot conclude that by admitting to the murder as charged Rivera admitted that he acted with actual malice, not just that the element of malice was satisfied.

We emphasize that Rivera made no admissions related to the murder other than pleading no contest to the count as charged. In some cases, the record may reveal that a defendant admitted *more* than the elements of the

17

offense charged, and such additional admissions may preclude relief under section 1170.95. (See, e.g., *People v. Verdugo* (2020) 44 Cal.App.5th 320, 330, review granted Mar. 18, 2020, S260493 [suggesting that relief would be precluded as a matter of law if petitioner "admitted being the actual killer as part of a guilty plea"]; *People v. Palacios* (1997) 56 Cal.App.4th 252, 257 [no contest plea admits all elements and " 'all allegations and factors comprising the charge contained in the pleading' "].)

Here, however, there is no basis on which to infer that Rivera admitted to acting with actual malice. His stipulation to the grand jury transcript as the factual basis for his plea does not establish such an admission. Under section 1192.5, a trial court taking a plea must make "an inquiry . . . of the defendant to satisfy itself . . . that there is a factual basis for the plea." "The factual basis required by section 1192.5 does not require more than establishing a prima facie factual basis for the charges. [Citation.] It is not necessary for the trial court to interrogate the defendant about possible defenses to the charged crime [citation], nor does the trial court have to be convinced of [the] defendant's guilt." (*People v. Holmes* (2004) 32 Cal.4th 432, 441, fn. omitted.) In addition, "[a] defendant is not required to personally admit the truth of the factual basis of the plea, which may be established by defense counsel's stipulation to a particular document." (*People v. French* (2008) 43 Cal.4th 36, 50–51.) Thus, absent an indication that a defendant admitted the truth of particular facts, the stipulation to a factual basis for the plea does not "constitute[] a binding admission for all purposes." (*Id.* at pp. 51–52; see, e.g., *People v. Saez* (2015) 237 Cal.App.4th 1177, 1206–1207 [stipulation to factual basis did not constitute admission of additional facts necessary to render prior conviction a strike].) For our purposes, this means that Rivera did not admit to the truth of any of the evidence presented to the

grand jury, and that evidence therefore cannot be used to demonstrate that he admitted to acting with actual malice. Thus, the trial court properly declined to rely on this evidence in making its ruling.

Nor does the record otherwise definitively establish that Rivera was not "convicted of felony murder or murder under a natural and probable consequences theory." (§ 1170.95, subd. (a).) The Attorney General contends that the grand jury transcript reveals that the case against Rivera "was never predicated on felony murder or a natural and probable consequences theory," because there were no instructions or argument to the grand jury based on either theory. Relying on *Nguyen*, the Attorney General argues that the absence of any mention in the record of an underlying felony or target offense that could support one of the no-longer-valid theories of murder demonstrates "as a matter of law" that Rivera "was convicted of malice murder."

In *Nguyen*, Division One of the Second District Court of Appeal held that a petitioner failed to make a prima facie showing of eligibility for relief under section 1170.95 because "the transcripts from the preliminary and plea hearings" established he "was convicted of second degree murder as a direct aider and abettor." (*Nguyen, supra*, 53 Cal.App.5th at p. 1166.) At the preliminary hearing, the prosecutor presented evidence and argued that the petitioner encouraged and/or paid his codefendant, the actual killer, to commit the murder. (*Id.* at pp. 1158–1161.) In opposing the petition, the People argued that " '[s]ufficient evidence presented at the preliminary hearing demonstrated that [the petitioner] was an aider and abettor to the murder,' " and " '[a]t no point did the People argue that the natural and probable consequences [doctrine] applied to this case.' " (*Id.* at p. 1161.) The petitioner, who was represented by counsel, responded that the preliminary

19

hearing evidence failed to establish express or implied malice and " 'more readily support[ed] a second degree felony murder or natural and probable consequences theory,' " although he also acknowledged that " 'the record [was] devoid of any description of the contemplated act' " that might support either theory. (*Id.* at p. 1162.) The trial court denied the petition on the basis that the petitioner was "not entitled to relief under section 1170.95 as a matter of law because the preliminary hearing transcript demonstrate[d] [he] aided and abetted the charged offenses, and the prosecution did not argue a natural and probable consequences theory." (*Id.* at p. 1163.)

The Court of Appeal affirmed, concluding that the petitioner was "not entitled to relief as a matter of law" because "[t]he transcripts from the preliminary and plea hearings demonstrate[d] [he] was convicted of second degree murder as a direct aider and abettor," as that "was the only theory put forth by the prosecutor" at both hearings. (*Nguyen, supra*, 53 Cal.App.5th at p. 1166–1167.) Noting that the petitioner unquestionably could not have made a prima facie showing of entitlement to relief under section 1170.95 had he gone to trial and been convicted by a jury that did not receive instructions on felony murder or the natural and probable consequences doctrine, *Nguyen* determined that the petitioner's "murder conviction after a guilty plea should not be accorded less weight and finality than a murder conviction after a jury trial." (*Nguyen*, at p. 1167.) Thus, "counsel's conjecture and speculation about other theories that could have been pursued at trial" was insufficient to overcome the conclusion that the conviction was based on a still-valid theory of murder. (*Id.* at p. 1167–1168.)

*Nguyen* involves similar facts to ours, but we decline to follow its holding. Although we agree that a murder conviction after a plea has just as much "weight and finality" as one after a trial (*Nguyen, supra*,

20

53 Cal.App.5th at p. 1167), this does not mean that the theory underlying each type of conviction can be ascertained with the same degree of certainty. The fact that a petitioner was not "convicted of felony murder or murder under a natural and probable consequences theory" at trial may be conclusively determined if, for example, the jury did not receive instructions on either theory. (See *People v. Soto* (2020) 51 Cal.App.5th 1043, 1055, review granted Sept. 23, 2020, S263939 [jury instructions demonstrated petitioner convicted on still-valid theory of murder]; *People v. Edwards* (2020) 48 Cal.App.5th 666, 674, review granted July 8, 2020, S262481 [same]; see also *People v. Daniel, supra,* 57 Cal.App.5th at p. 677 [error in not appointing counsel under section 1170.95 harmless where jury not instructed on felony murder or the natural and probable consequences doctrine].) Under such circumstances, the petitioner was necessarily convicted of murder under a still-valid theory, and thus "ineligible for resentencing" as a matter of law. (§ 1170.95, subd. (d)(3).)

In contrast, when a petitioner has entered a plea to murder after being charged by information or indicted, the record of conviction will generally lack any comparable assurance of the basis for the conviction. Both "a magistrate deciding whether to bind a defendant over to the superior court on a criminal complaint" and a grand jury "determining whether to return an indictment" need only find "probable cause" to believe the defendant committed the charged crime. (*Cummiskey v. Superior Court* (1992) 3 Cal.4th 1018, 1027–1029.) " ' "Of course, the probable cause test is not identical with the test which controls a [trial] jury . . . . The jury must be convinced to a moral certainty and beyond a reasonable doubt of the existence of the crime charged in the information and of every essential element of that crime." ' " (*Id.* at p. 1027.) But a magistrate or grand jury

21

" ' "must be convinced only of such a state of facts as would lead a [person] of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion of the guilt of the accused. [Citations.] In other words, 'Evidence that will justify a prosecution need not be sufficient to support a conviction.' " ' " (*Id.* at pp. 1027, 1029.)

And while a grand jury receives instructions, those instructions do not fix the theories on which a case may be prosecuted or establish the basis for a post-indictment plea. A prosecutor has "no duty to instruct the grand jury sua sponte on lesser included offenses" because "it 'is not the province of the [g]rand [j]ury to determine the degree of murder.' " (*Cummiskey v. Superior Court*, *supra*, 3 Cal.4th at p. 1034.) Instead, "the primary function of the grand jury is to investigate the crime charged and to determine whether probable cause exists to return an indictment for that offense. The question whether the evidence would support, 'beyond a reasonable doubt,' a lesser included crime only, or whether a particular defense should mitigate the crime, is more appropriately left to pretrial motions addressed to the trial court, or to determination by a trial jury." (*Id.* at p. 1036.) Thus, a grand jury's return of an indictment after being instructed on only certain theories of murder does not reflect a determination that those are the only viable theories available, much less that murder has been proven under them beyond a reasonable doubt.

The Attorney General also argues, based on the grand jury transcript, that Rivera separately failed to make a prima facie showing that he "could not be convicted of first or second degree murder" after Senate Bill No. 1437. (§ 1170.95, subd. (a)(3).) Again relying on *Nguyen*, the Attorney General claims that "[t]here was no evidence presented of an underlying felony or target offense which could serve as a basis for felony murder or murder under

22

the natural and probable consequences doctrine. Rather, the evidence supported a murder based on malice such that [Rivera] could still be convicted under the current law."

We disagree with *Nguyen* to the extent it suggests that relief under section 1170.95 is precluded *as a matter of law* simply because there is no mention in the pre-plea record of an underlying offense that could support liability for felony murder or murder under the natural and probable consequences doctrine. (See *Nguyen, supra*, 53 Cal.App.5th at pp. 1167–1168.) In our view, when a petitioner disputes that the evidence presented at a pre-plea proceeding demonstrates his or her guilt under a still-valid theory of murder, and no " 'readily ascertainable facts' " definitively prove otherwise, a trial court cannot deny a petition at the prima facie stage without resorting to " 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Duchine, supra*, 60 Cal.App.5th at p. 812, quoting *Drayton, supra*, 47 Cal.App.5th at p. 980.)[12]

We need not decide whether under other circumstances a trial court could rely on a grand jury transcript to deny a section 1170.95 petition for failure to make the required prima facie showing. In *People v. Cooper* (2020) 54 Cal.App.5th 106, review granted Nov. 10, 2020, S264684, we left open the possibility that if a petitioner filed a facially sufficient petition but thereafter failed to submit briefing, a court could rely on a preliminary hearing

---

[12] *Nguyen*, which cites *Drayton* for this principle (*Nguyen, supra*, 53 Cal.App.5th at p. 1166), could be read to imply that the record's silence about an underlying felony or target offense before a petitioner enters a plea is a "readily ascertainable fact" establishing that the petitioner was convicted under a still-valid theory of murder. For the reasons given above, however, we disagree that evidence or arguments presented to a grand jury or at a preliminary hearing definitively establish the theories under which a petitioner was or could be convicted of murder.

transcript to deny the petition. (*Id.* at pp. 125–126; see *People v. Verdugo*, *supra*, 44 Cal.App.5th at pp. 329–330.) Likewise, we leave open the possibility that if a petitioner who entered a plea to murder after being indicted submits a form petition making the required declarations but does not in any way contest the evidence presented to the grand jury, a trial court can rely on the grand jury transcript to deny the petition before holding an evidentiary hearing.

Here, however, Rivera not only filed a facially sufficient petition but, with the assistance of counsel, offered a theory under which the evidence presented to the grand jury was consistent with his guilt of murder under the natural and probable consequences doctrine, based upon an intent to participate in a target offense of assault. (See *In re R.G.*, *supra*, 35 Cal.App.5th at p. 146.) In doing so, he created a factual dispute that cannot be resolved at the prima facie stage since nothing in the record definitively foreclosed his theory. Accordingly, he is entitled to a hearing under section 1170.95, subdivision (d).[13]

## III.
### DISPOSITION

The July 19, 2019 order denying River's section 1170.95 petition is reversed. On remand, the trial court is directed to issue an order to show cause and conduct further proceedings as required under section 1170.95, subdivision (d).

---

[13] The law is unsettled about what showing the prosecution must make at such a hearing to establish that a petitioner is ineligible for relief. (Compare, e.g., *People v. Duke*, *supra*, 55 Cal.App.5th 113, with *People v. Rodriguez* (2020) 58 Cal.App.5th 227, review granted Mar. 10, 2020, S266652.) Though we are not called upon to resolve the issue in this appeal, we recognize that the trial court faces a difficult task on remand, including in determining what weight to give the evidence already in the record.

_____

Humes, P.J.



WE CONCUR:




_____

Margulies, J.




_____

Sanchez, J.




_People v. Rivera_  A158284

25

Trial Court:

Superior Court of the County of San Mateo

Trial Judge:

Hon. Lisa A. Novak

Counsel for Defendant and Appellant:

Janice M. Lagerlof, under appointment by the Court of Appeal

Counsel for Plaintiff and Respondent:

Xavier Becerra, Attorney General

Lance E. Winters, Chief Assistant Attorney General

Jeffrey M. Laurence, Senior Assistant Attorney General

Rene A. Chacon, Supervising Deputy Attorney General

Julia Y. Je, Deputy Attorney General

*People v. Rivera*  A158284